**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
─────────────────────────────────────────

**MAUREEN S.,**

                              **Plaintiff,**

        **v.**                                                        **5:20-cv-01158**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

                      **Defendant.**
─────────────────────────────────────────

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                              **DECISION and ORDER**

## I.    INTRODUCTION

        Plaintiff Maureen S. brings this action pursuant to the Social Security Act, 42 U.S.C.

§ 405(g), for review of a final determination by the Commissioner of Social Security

denying her application for benefits.  Plaintiff alleges that the Administrative Law Judge's

("ALJ") decision denying her application was not supported by substantial evidence and

contrary to the applicable legal standards.  Pursuant to Northern District of New York

General Order No. 8, the Court proceeds as if both parties had accompanied their briefs

with a motion for judgment on the pleadings.

## II.    PROCEDURAL HISTORY

        On October 14, 2016, Plaintiff filed for Title II Disability Insurance Benefits, alleging

disability beginning September 21, 2016 due to closed tunnels pinching nerves in the

hands, trigger thumbs, arthritis in the knees. hip pain, lower back pain, anxiety,

1

depression, hiatal hernia, underactive thyroid, headaches, obesity ["overweight"], high cholesterol, pelvic pain, rectal pain, chronic constipation/diarrhea, irritable bowel syndrome (IBS), and gastroesophageal reflux disease (GERD). Administrative Record (T) at 93-94, 105.  Her claim was denied December 19, 2016. T 105.  After a hearing held June 5, 2019 T 37, ALJ Laureen Penn issued an unfavorable decision dated June 20, 2019. T 15-29.

In her decision, the ALJ found that Plaintiff met the insured status requirements through December 31, 2020 and had not engaged in substantial gainful activity since the alleged onset date (September 21, 2016). T 18.  She found Plaintiff had the following severe impairments: seronegative rheumatoid arthritis, fibromyalgia, migraine headaches, degenerative disc disease, DeQuervain's tenosynovitis and carpal tunnel syndrome, tinnitus, psoriasis and psoriatic arthritis, obesity, generalized anxiety disorder, major depressive disorder, ovarian cysts, and inflammatory polyarthropathy. T 18. She found that no combination of impairments met or equaled a listing. T 18. The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work, except she could:

> stand and walk for 4 hours, and sit thirty minutes at a time, for a total of six hours. The claimant can occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds. The claimant can occasionally reach overhead bilaterally and can frequently handle and finger bilaterally. The claimant cannot have concentrated exposure to vibration or hazards. The claimant [is] able to perform simple, routine, repetitive work involving occasional changes.

T 22.  The ALJ determined that Plaintiff was unable to perform her past work, though she could perform other work as a marker (DOT 209.587-034), document preparer (DOT 249.587-018), order clerk (DOT 209.567-014), addresser (DOT 209.587-010), and dowel inspector (DOT 669.687-014). T 27-28.

The Appeals Council denied review July 21, 2020. T 1.  Plaintiff sues to challenge

the ALJ's decision. This Court has jurisdiction under 42 U.S.C. § 405(g).

## III.   FACTS

### a.  Age, Education, and Work Experience

Plaintiff was 44 years old on the alleged onset date and 47 years old on the date of

the ALJ's decision. T 93. She has a high school education. T 244. She has past relevant

work as an administrative clerk (DOT 219.362-010), as a medical secretary (DOT

201.362-014), in a composite job consisting of small business owner (DOT 185.167-046)

and as a manicurist (DOT 331.674-010). T 62-63.

### b.  Opinion Evidence

On December 16, 2016, S. Juriga, Ph.D., the State Agency psychological

consultant, opined that Plaintiff was capable of the four basic functions of simple work. T

102.

On December 8, 2016, Corey Grassl, Psy.D., conducted a psychological

consultative examination for the Agency. T 919. Plaintiff reported sad moods, loss of usual

interests, irritability, fatigue, worthlessness, diminished self-esteem, concentration

difficulties, and difficulty falling and staying asleep. T 919-20. Plaintiff also reported

excessive worry, restlessness, and muscle tension and short-term memory deficit. T 920.

On examination, Dr. Grassl observed a depressed affect and dysthymic mood. T 902-21.

Dr. Grassl diagnosed major depressive disorder (recurrent episodes) and generalized

anxiety disorder. T 922. Dr. Grassl opined that Plaintiff was i) moderately limited in her

ability to appropriately deal with stress, ii) moderately limited in her ability to learn new

tasks and perform complex tasks independently, and iii) mildly limited in her ability to

3

maintain attention and concentration. T 921-22.

Primary care provider Nisha Singh, M.D., completed a Medical Source Statement dated May 22, 2019. T 1752-55.  Dr. Singh cited diagnoses of psoriatic arthritis, migraines, and chronic abdominal pain. T 1752. She also cited Plaintiff's treatment from rheumatology, pain management, neurology, and dermatology. T 1756.  Dr. Singh opined that Plaintiff could sit for fifteen minutes at a time for a total of less than two hours "in a competitive work situation." T 1752.  She further opined that Plaintiff could stand for fifteen minutes at a time and stand/walk for a total of less than two hours "in a competitive work situation." T 1752.  Plaintiff needed to be able to change positions at will. T 1752. Dr. Singh affirmed that Plaintiff's knees would need to be elevated above the waist for 75-80% of a sedentary workday. T 1752-53. Dr. Singh opined that Plaintiff could occasionally turn the head to the right or left, look up, or hold the head in a static position. T 1753. She could rarely look down on a sustained basis. T 1753. Plaintiff could occasionally reach and rarely handle and finger. T 1753.

### c.  Medical Evidence

In her brief, Plaintiff recounts her fairly extensive medical evidence contained in the record. *See* Dkt. No. 12, pp. 4-16.  The Court assumes familiarity with this medical evidence and will set forth in the body of this decision only that medical evidence as relevant to the Court's determinations.

### d.  Hearing Testimony

At the June 2019 hearing, Plaintiff testified as follows.  She brought an MRI to the hearing, which was represented as showing: "multi-level cervical degenerative disc

disease affecting level C3 through C7." T 44. Plaintiff explained that she had associated neck pain and migraines. T 44. Neck pain was at a severity of 7 of 10 two to four times a month. T 45.  Pain generally increased with activity. T 45. She struggled with activity such as looking down at a desk for long periods or holding her head still to look at a computer screen. T 45. Her headaches were reactive to stress and lighting. T 46. She would have migraines two to three times a month. T 46. She takes morphine for her knee and joint pain. T 47. She does not go to the emergency room for her significant knee pain as: "They don't do anything for me at the emergency room. It's my psoriatic arthritis." T 47-48. Nightly morphine helped, but did not resolve the pain. T 48. She took daily sulfasalazine, daily diclofenac, and weekly methotrexate. T 48-49. She also had fatigue attributed to fibromyalgia. T 49. She also complained of chronic abdominal pain, which she posited to be nerve related given her CT-guided nerve block, though no doctor has explained it to her as related to an autoimmune issue. T 52-53. She showered three or four times a week, which was painful. T 55.

Psoriatic arthritis also affected her hands and feet. T 48. Concerning the hands, Plaintiff specifically cited issues with numbness, tingling, and stiffness. T 50. Her neurologist told her that this is not related to her carpal tunnel or DeQuervain's tenosynovitis, but rather that is could be an autoimmune issue. T 50.  She would not be able to reach in forward direction to type on a computer due to pain and a lack of strength that existed during and after such reaching. T 52.

Plaintiff characterized her depression as mood swings in which she would get "very down in the dumps." T 51. She also had anxiety, which she associated with her inability to get things done due to her [physical] limitations. T 51.

A vocational expert (VE) testified that a person of Plaintiff's age, education, and work experience, with the ALJ's assessed RFC, would be able to perform work as a marker, document preparer, order clerk, addresser, and dowel inspector.   The VE further testified, however, that if the same person was limited to occasional fingering and handling, there would be no work available. T 65.  Separately, an option to sit or stand/walk at will would preclude work. T 66.  Moreover, limitation to looking down only five percent of the day, turning the neck only one-third of a day, and holding the head still while looking forward only one third of the day, would preclude sedentary work. T 66.

## IV.   ISSUES ON APPEAL

Plaintiff contends:

1. The ALJ's determined physical RFC is not supported by substantial evidence due to error in weighing opinion evidence; and

2. The ALJ's assessment of Plaintiff's subjective complaints is unsupported by substantial evidence.

## V.   STANDARD OF REVIEW

In reviewing a final decision of the Commissioner, courts must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision. *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)); *see also Brennan v. Colvin*, No. 13-CV-6338 AJN RLE, 2015 WL 1402204, at *10 (S.D.N.Y. Mar. 25, 2015).   "Failure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004). Accordingly, the reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

If the ALJ applied the correct legal standards, the reviewing court must determine whether the ALJ's decision is supported by substantial evidence. *Tejada*, 167 F.3d at 773; *Bowen*, 817 F.2d at 985. "Substantial evidence

means more than a mere scintilla." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.; see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive. 42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). Remand may accordingly be appropriate where the ALJ has failed to develop the record, *Klemens v. Berryhill*, 703 F. App'x 35, 38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999), adequately appraise the weight or persuasive value of witness testimony, *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019); *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008), or explain [her] reasoning, *Klemens*, 703 F. App'x at 36-38; *Pratts*, 94 F.3d at 39.

*Robert O. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1612 (TWD), 2022 WL 593554, at *1–2

(N.D.N.Y. Feb. 28, 2022)(footnote omitted).

## VI.    DISCUSSION

### a. Weighing Opinion Evidence

Plaintiff contends that the ALJ erred by only giving "limited weight" to Dr. Singh's

treating opinion.  Plaintiff argues that "[a] proper analysis of Dr. Singh's opinion in

accordance with 20 C.F.R. §404.1527 would result in more weight to the opinion and a

determination of disability in accordance with VE testimony." Dkt. 12 at 21.

Claims filed before March 27, 2017, as is the case here, are governed by the

treating physician rule set forth in 20 C.F.R. § 404.1527.  As the Second Circuit recently

stated, "[i]n the context of disability adjudications, the Administration's discretion in making

factual determinations is . . . constrained by self-imposed regulations— one of which sets

forth the treating physician rule." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022)(citing

20 C.F.R. § 404.1527(c)(2); *Burgess v. Astrue*, 537 F.3d 117, 128-29 (2d Cir. 2008)).

"The treating physician rule, as its name connotes, states that the medical opinion of a

claimant's treating physician must be given 'controlling weight' if it 'is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

with the other substantial evidence in the case record.'" *Id.* at 359-60 (quoting *Estrella v.*

*Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) and citing 20 C.F.R. § 404.1527(c)(2)).   "Put

another way, the rule requires the ALJ to defer to the treating physician's opinion when

making disability determinations if the opinion is supported by reliable medical techniques

and is not contradicted by other reasonable evidence in the administrative record." *Id.* at

360 (citing 20 C.F.R. § 404.1527(c)(2)).

       "Moreover, the ALJ must articulate 'good reasons' to rebut the presumption of

controlling deference conferred on the treating physician's opinion." *Id.*  (citing *Estrella*,

925 F.3d at 96; *Burgess*, 537 F.3d at 129–30).   "If an ALJ reasonably finds that the

treating physician's medical opinion is not entitled to 'controlling weight' under the treating

physician rule, then the ALJ must determine how much weight to assign the treating

physician's opinion." *Id.* at n. 3.   "The ALJ does so by 'explicitly' applying the *Burgess*

factors: '(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of

medical evidence supporting the opinion; (3) the consistency of the opinion with the

remaining medical evidence; and (4) whether the physician is a specialist.'" *Id.* (quoting

*Estrella*, 925 F.3d at 95-96, in turn quoting *Selian v. Astrue*, 708 F.3d 409, 419-20 (2d Cir.

2013) (per curiam)); *see Anthony A.* v. *Comm'r of Soc. Sec.*, No. 3:20-CV-00943 (TWD),

2022 WL 806890, at *3 (N.D.N.Y. Mar. 17, 2022)("If an ALJ gives a treating physician's

opinion less than controlling weight, he or she must consider various factors in determining how much weight, if any, to give the opinion, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the treating physician's report; (4) the consistency of the treating physician's opinion with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in the claimant's case.")(citing  20 C.F.R. § 404.1527(c)).  Failure to explicitly apply these factors "constitutes a procedural error subject to a harmless error analysis." *Colgan*, 22 F.4th at 360, n. 3 (citing *Estrella*, 925 F.3d at 95-96).  "[A]n ALJ need not mechanically recite these factors as long as the record reflects a proper application of the substance of the rule."  *Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 184 (N.D.N.Y. 2019).  However, "[t]he failure to apply the appropriate legal standards for considering a treating physician's opinion constitutes a basis for reversal of an adverse determination, as is the decisionmaker's failure to provide reasons for rejecting the opinions." *Jessica W. v. Comm'r of Soc. Sec.*, No. 19-CV-01427 (DEP), 2021 WL 797069, at *6 (N.D.N.Y. Mar. 2, 2021)(citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *Zabala v. Astrue*, 595 F.3d 402, 409) (2d Cir. 2010)).

Here, in addressing Dr. Singh's opinion, the ALJ stated:

[T]he undersigned gives limited weight to the opinion provided by Nisha Singh, M.D., the claimant's primary care provider, who opined that the claimant would be limited to a significantly reduced range of sedentary work, including that she could sit, stand, or walk for less than two hours total, she would need frequent breaks, she would need to elevate her legs above her waist eighty percent of the time, and would be off-task more than twenty percent of the workday. However, the undersigned finds that such extreme limitations are unsupported by the objective evidence in the record and

> inconsistent with the examination findings detailed above, which generally
> found the claimant had a normal gait, with intact strength and sensation, as
> well as benign diagnostic imaging and testing. Moreover, these limitations
> appear to be largely based on the claimant's self-reports, as Dr. Singh's own
> physical examinations routinely found the claimant had normal motor
> strength and sensation, as well as full range of motion and a smooth and
> coordinated gait.

T 25-26 (record citations omitted).

The ALJ failed to properly apply the treating physician rule such that the Court can conduct meaningful review.  The ALJ does not specifically indicate whether Dr. Singh's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  The Court notes that Dr. Singh's Medical Source Statement indicates diagnoses of psoriatic arthritis, migraines, and chronic abdominal pain, and that Plaintiff has been followed by rheumatology, pain management, neurology, and dermatology.  The ALJ's reason for providing limited weight to Dr. Singh's opinion fails to explain whether the asserted restrictions were supported by medically acceptable clinical and laboratory diagnostic techniques underlying these diagnoses or from the treatments that Plaintiff received.

The ALJ's assessment of limited weight to Dr. Singh's opinion also improperly places too much emphasis on the opinion being based on Plaintiff's subjective complaints. "The Second Circuit has said that the fact that a doctor also relies on a Plaintiff's subjective complaints does not undermine his opinion 'as a patient's report of complaints, or history, is an essential diagnostic tool.'" *Brownell v. Comm'r of Soc. Sec.*, No. 1:05-CV-0588 (NPM/VEB), 2009 WL 5214948, at *5 (N.D.N.Y. Dec. 28, 2009)(quoting *Green–Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003), and citing *McCarty v. Astrue*, 2008 WL 3884357, at *6 (N.Y.N.D. Aug. 18, 2008) (finding that "reliance on

10

Plaintiff's subjective complaints is not a valid basis for rejecting [the treating physician's] opinion.")); *see also Kelly Ann G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1013 (CFH), 2022 WL 160266, at *6 (N.D.N.Y. Jan. 18, 2022) ("An ALJ may not reject a medical opinion solely because it relies on a plaintiff's subjective complaints.")(citing *Tomczak v. Comm'r of Soc. Sec.*, No. 18-CV-64 (FPG), 2019 WL 2059679, at *1 (W.D.N.Y. May 9, 2019); *Showers v. Colvin*, No. 3:13-CV-1147 (GLS), 2015 WL 1383819, at *8, n.18 (N.D.N.Y. Mar. 25, 2015) ("[I]t is legally flawed" for the ALJ to discount medical "diagnoses of additional mental impairments because they 'were based solely upon the claimant's subjective reports.'")).  A physician's reliance on subjective complaints is particularly important in cases involving chronic conditions that may not be susceptible to precise diagnoses through particular medical tests, such as with fibromyalgia, psoriatic arthritis, migraines, and chronic abdominal pain.  As Plaintiff testified at the hearing, she was on pain medication for her knee and joint pain, her psoriatic arthritis affected her hands and feet, she had reoccurring migraines that were reactive to stress and lighting, and she had severe neck pain two to four times a month that caused her to struggle with activities such as looking down at a desk for long periods or holding her head still to look at a computer screen that she believed was associated with her multi-level cervical degenerative disc disease.  The ALJ fails to explain whether, in light of Plaintiff's diagnoses and treatments, Plaintiff's subjective complaints could have properly been used as diagnostic tool supporting Dr. Singh's restrictions.

The ALJ's statement that "Dr. Singh's own physical examinations routinely found the claimant had normal motor strength and sensation, as well as full range of motion and

a smooth and coordinated gait," to the extent it is offered as a reason to provide limited weight Dr. Singh's restrictions, is close to the ALJ improperly offering her own medical opinion as a reason to overcome the presumption created by the treating physician rule. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.")*; Shaw v. Chater*, 221 F.3d 126, 134-35 (2d Cir. 2000) (prohibiting the ALJ from substituting "his own expertise or view of the medical proof for the treating physician's opinion," finding that the ALJ did, and explaining "[t]his is not the overwhelmingly compelling type of critique that would permit the [ALJ] to overcome an otherwise valid medical opinion."). The failure of the ALJ to equate Dr. Singh's physical examination findings to Dr. Singh's particular restrictions prevents meaningful review of the ALJ's determination to decline to give controlling weight to  Dr. Singh's particular restrictions.

This same reasoning applies to the ALJ's finding that Dr. Singh's "extreme limitations are unsupported by the objective evidence in the record and inconsistent with the examination findings detailed above, which generally found the claimant had a normal gait, with intact strength and sensation, as well as benign diagnostic imaging and testing." Without equating any particular examination finding to Dr. Singh's particular restrictions, the Court is left to guess as to what evidence the ALJ refers.  While the Commissioner cites to evidence in the ALJ's decision that appears to support the ALJ's reasoning  for providing only limited weight to Dr. Singh's opinion, and while the ALJ did a thorough job of reviewing Plaintiff's medical evidence, it is for the ALJ to cite to particular evidence and explain why that evidence is inconsistent with Dr. Singh's opinion.  Furthermore, as

Plaintiff argues, there is some medical evidence in the record plausibly supporting Dr.

Singh's restrictions that the ALJ could have addressed in the context of reaching her

conclusion that the objective evidence contradicted Dr. Singh's restrictions.  *See* Dkt. No.

12 at 20-21.[1]  By failing to do so, the Court cannot conclude that the ALJ applied the third

and fourth *Burgess* factors requiring the ALJ to determine the amount of medical evidence

supporting the opinion, and examining the consistency of  Dr. Singh's opinion with the

remaining medical evidence.  While an ALJ "[i]s not required to mention or discuss every

single piece of evidence in the record," *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d

---

[1]Plaintiff argues:

Dr. Singh's opinion that Plaintiff needed to change positions, and especially Dr. Singh's opinion that Plaintiff needed to elevate her legs with sedentary work, is consistent with Dr. Greenky's January 15, 2019 note stating that Plaintiff's knee pain was worse when sitting with her knee flexed. T 1574. It is consistent with Plaintiff's report to Dr. Khairallah on December 5, 2017 that she had pain in the left calf muscle starting a couple of weeks prior after a 10-minute drive. T 1724. Moreover, there is consistency with the numerous reports of knee issues, which do not appear resolved. T 1304, 1313/1317, 1328, 1341, 1574, 1578, 1664, 1669, 1673, 1679, 1697, 1743.

Dr. Singh's opinion that Plaintiff could rarely handle and finger, "in a competitive work situation," is consistent with the numerous indications of issues with the finger joints and hands. T 1240, 1673, 1678, 1685, 1691, 1695, 1701, 1713, 1717, 1738, 1743. It is important to note that Dr. Singh's limitations were calculated "in a competitive work situation. Consider this in light of flexibility of unemployment addressed in *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons…, and is not held to a minimum standard of performance, as she would be by an employer."). Dr. Singh's positional limitations of sitting for fifteen minutes at a time for a total of less than two hours were also calculated "in a competitive work situation." T 1752.

Dkt. No. 12 at 20-21.

67, 78 (N.D.N.Y. 2005), an ALJ may not "ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence." *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019).

To the extent the Commissioner argues that Dr. Juriga's opinion provides substantial evidence supporting the ALJ's determination to provide Dr. Singh's opinion only limited weight, the argument is without merit.  When applying the substantial evidence standard under the treating physician rule, courts often look to see if there is any medical opinion evidence that contradicts the treating physician's opinion. *See Reilly v. Comm'r of Soc. Sec.*, No. 21-8-CV, 2022 WL 803316, at *2 (2d Cir. Mar. 17, 2022)("[T]he opinion of a treating physician need not be given controlling weight when it is 'not consistent with other substantial evidence in the record, such as the opinions of other medical experts.'") (quoting *Halloran*, 362 F.3d at 32); *Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 184 (N.D.N.Y. 2019)("[W]hen a treating source's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts, an ALJ may afford it less than controlling weight.").  However, the ALJ did not specifically cite Dr. Juriga's opinion as contradicting Dr. Singh's opinion.  Rather, the ALJ indicated that she gave "some weight to the opinion provided by S. Juriga, Ph.D., the State Agency psychological consultant at the initial level, who opined that the claimant was able to perform the four basic functions of simple work."  T 26.  The ALJ reasoned:

> Although Dr. Juriga is a nontreating, non-examining medical source, the[]
> opinion is based upon a thorough review of the available medical record and
> a comprehensive understanding of Agency rules and regulations.  The
> undersigned finds this opinion is internally consistent and well supported by

a reasonable explanation and the available evidence, and has been accounted for in the claimant's residual functional capacity, which limits her to simple, routine, repetitive work with only occasional changes. The undersigned gives little weight; however, that the claimant would be moderately limited in interacting with the public, as this is inconsistent with her lack of mental health treatment during this time, as well as with other evidence in the record, including the consultative examination noting no limitations in this area and her reported ability to go out alone and perform public errands such as shopping in stores.

*Id.*

To the extent the Commissioner contends that Dr. Juriga's opinion supports the RFC and therefore is a reason to assign Dr. Singh's opinion only limited weight,  Plaintiff argues that "[t]he State Agency physical opinion [by Dr. Juriga] was issued by a single decision maker ["SDM"] and therefore cannot be afforded any weight."  Dkt. No. 12 at 3 (citing *Kociuba v. Comm'r of Soc. Sec.*, No. 5:16-CV-0064 (GTS), 2017 WL 2210511, at *7 (N.D.N.Y. May 19, 2017)).  There is some merit to Plaintiff's argument.

"SDMs are non-physician disability examiners who 'may make the initial disability determination in most cases without requiring the signature of a medical consultant.'" *Lozama v. Colvin*, No. 1:13-CV-0020, 2016 WL 1259411, at *5 (N.D.N.Y. Mar. 30, 2016)(quoting *Hart v. Astrue*, 32 F. Supp.3d 227, 237 (N.D.N.Y. 2012)).  "Because SDMs are not medical professionals, courts have concluded that an SDM's RFC assessment is entitled to no weight as a medical opinion." *Durakovic v. Comm'r of Soc. Sec.*, No. 3:17-CV- 0894 (TJM/WBC), 2018 WL 4039372, at *7 (N.D.N.Y. May 30, 2018), *report and recommendation adopted*, 2018 WL 4033757 (N.D.N.Y. Aug. 23, 2018)(citing *Buono v. Colvin*, No. 14-CV-2388, 2015 WL 4390645, at *2 (E.D.N.Y. July 15, 2015); *Box v. Colvin*, 3 F. Supp. 3d 27, 46 (E.D.N.Y. 2014); *Kociuba*,  2017 WL 2210511, at *7 (citing *Robles v.*

*Comm'r of Soc. Sec.*, No. 5:15-CY-1359, 2016 WL 7048709, at *5 (N.D.N.Y. Dec. 5, 2016)); *see Robles*, 2016 WL 7048709, at *6 ("ALJs have been instructed by the Social Security Administration that the opinions of SDMs 'should not be afforded any evidentiary weight at the administrative hearing level,' which has led numerous courts to conclude that assigning any evidentiary weight to a SDM's opinion is an error.") (quoting *Martin v. Astrue*, 10-CV-1113 (TJM), 2012 WL 4107818, at *15 (N.D.N.Y., Sept. 19, 2012)).   While "[i]t may be harmless error for an ALJ to afford minimal weight to an SDM's assessment where the ALJ adopts greater restrictions than indicated by that source, the ALJ's conclusions are supported by the medical record, and it is clear the ALJ would have reached the same conclusion even if he had assigned no evidentiary weight to an SDM's assessment," *Mary K. v. Comm'r of Soc. Sec.*, No. 1:18-CV-1271 (ATB), 2020 WL 1041699, at *6 (N.D.N.Y. Mar. 4, 2020)(citing *Hart v. Astrue*, 32 F. Supp. 3d 227, 237 (N.D.N.Y. 2012)), "under the Treating Physician Rule, a consultative physician's opinion was generally entitled to 'little weight.'" *Rosario v.  Comm'r of Soc. Sec.*, No. 20 CIV. 7749 (SLC), 2022 WL 819810, at *7 (S.D.N.Y. Mar. 18, 2022) (citing *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009)).  If the ALJ believed that Dr. Juriga's opinion that Plaintiff was able to perform the four basic functions of simple work constitutes substantial evidence contradicting Dr. Singh's opinion regarding Plaintiff's physical limitations, then the ALJ should have so stated and identified what particular parts of Dr. Juriga's opinion leads to this conclusion.  Again, the Court is not going to guess as to whether Dr. Juriga's opinion influenced the ALJ's treating physician rule determination.

To the extent the Commissioner argues that the ALJ relied on the temporary

restrictions given to Plaintiff after hospital discharges or procedures as a basis for

assigning Dr. Singh's opinion limited weight, the argument is without merit.  Like with  Dr.

Juriga's opinion, the ALJ did not specifically indicate that these temporary restrictions

contradicted Dr. Singh's opinion.  Rather, the ALJ stated:

> The undersigned has also considered, and gives some weight to, the limitations contained in the temporary restrictions given to the claimant after hospital discharges or procedures, which generally contained restrictions against "heavy lifting," driving or operating heavy machinery, or avoid straining or over-exertion, though the claimant was advised to carry out her regular daily activities. First, the undersigned notes that these are temporary limitations, and as such, are of limited probative value in determining the claimant's residual functional capacity throughout the period at issue. Further, the undersigned notes that these are broad, vague, and generalized limitations that are part of the standard discharge procedure. However, the undersigned has still given these opinions some weight in determining the overall severity of the claimant's symptoms and limitations during the relevant period.

T 26.

As is clear, the ALJ did not specifically cite to these temporary restrictions as

contradictory evidence to Dr. Singh's opinion, and the ALJ does not indicate whether

these broad, vague, and generalized limitations "rise to the level of evidence that is

sufficiently substantial to undermine the opinion of the treating physician." *Burgess*, 537

F.3d at 128–29; *see Colgan*, 22 F.4th at 364 ("[I]n *Burgess v. Astrue*, we stated that "an

opinion couched in terms so vague as to render it useless in evaluating the claimant's

residual functional capacity" cannot "rise to the level of evidence that is sufficiently

substantial to undermine the opinion of the treating physician.'")(quoting *Burgess* 537 F.3d

at 128–29 (internal citation and quotation marks omitted)).

In the end, the ALJ may well conclude that substantial evidence supports a

conclusion to afford Dr. Singh's opinion less than controlling weight.  However, because

the ALJ failed to apply the appropriate legal standards for considering a treating physician's opinion, and failed to provide sufficient reasons for according Dr. Singh's opinion less than controlling weight, the ALJ's decision must be reversed and the matter remanded. *See Jessica W.*, 2021 WL 797069, at *6   This was not harmless error because, if Dr. Singh's opinion had been assigned controlling weight, the ALJ might have determined that Plaintiff was incapable of performing any work.  Upon remand, the ALJ should conduct further proceedings to determine the proper weight to assign Dr. Singh's opinion.

### b.  Plaintiff's subjective complaints

Plaintiff argues that "[t]he ALJ's subjective complaint analysis overvalues objective evidence contrary to 20 C.F.R. §404.1529(c)(2)." Dkt. 12 at 22.   In this regard, Plaintiff points out that under 20 C.F.R. §404.1529(c)(2), the ALJ must use a two-step analysis of Plaintiff's testimony and must i) determine whether there is a medically determinable impairment that could reasonably be expected to produce pain or other symptoms, and ii) evaluate the intensity and persistence of those symptoms. 20 C.F.R. §404.1529(c)(1). Plaintiff contends that her statements about her symptoms cannot be rejected solely because the medical evidence does not substantiate her claims, *see* 20 C.F.R. §404.1529(c)(2), but rather the ALJ must also consider listed factors (daily activities, location/duration/ frequency/intensity of symptoms, precipitating and aggravating factors, type/dosage/ effectiveness/side effects of medications, other treatment and measures taken, and other factors concerning limitations due to symptoms). *See* 20 C.F.R. §404.1529(c)(3).

Plaintiff asserts:

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, though her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the evidence in the record. T 23.

To the extent that it may be argued that the ALJ considered level of treatment in addition to the objective evidence, the ALJ's analysis falls short. Plaintiff consistently sought treatment for her pain seeking treatment for whatever causes the medical professionals cited. While treatment for pelvic/epigastric pain may have subsided, other pain that had been co-morbid, and treatments for that pain, continued with prescriptions and procedures.

The ALJ's subjective complaint analysis is too reliant on objective evidence contrary to 20 C.F.R. §404.1529(c)(2). Therefore, it is respectfully requested that the ALJ's decision be vacated.

Dkt. 12 at 22-23.

As the Commissioner points out, however, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).  The Commissioner argues that rather than solely relying on the objective evidence, the ALJ also relied on Dr. Juriga's opinion, the mild temporary restrictions that other medical providers repeatedly advised, and the conservative nature of plaintiff's mental health treatment. *See* Dkt. 16 at 4-5.[2]  Further,

---

[2]The Commissioner points out the ALJ noted that: although plaintiff had fibromyalgia and inflammatory arthritis, she had a normal gait, with normal motor strength and sensation, no evidence of diminished dexterity or reduced grip strength, and plaintiff was able to bend and touch her toes, T 23-24; Plaintiff "was often described as having full range of motion of all joints in her upper and lower extremities, and her grip strength, when addressed, was described as 'good' bilaterally," T 24; although Plaintiff complained of

(continued...)

the Commissioner points out that although Plaintiff lists several factors that can be

relevant to the ALJ's evaluation of symptoms, the ALJ is not required to "explicitly"

consider each of those factors. *Cichocki*, 534 F. App'x at 75-76.  Moreover,

Despite Plaintiff's argument that the level of treatment she received, in addition to

the objective evidence, constitutes insufficient evidence to evaluate the intensity and

persistence of her symptoms, that is a determination left to the Commissioner.  The

Court's role is to determine whether the ALJ applied the correct standard, and if she did,

whether the ALJ's decision is supported by substantial evidence.  With regard to the

ALJ's assessment of the intensity, persistence, and limiting effects of Plaintiff's symptoms,

the Court finds for the Commissioner on both issues. Accordingly, Plaintiff's motion on this

ground is denied.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's motion for judgment on the pleadings is

---

[2](...continued)
DeQuervain's tenosynovitis and carpal tunnel syndrome, following a November 2016 surgery she had no more numbness or tingling, and intact sensation and grip strength, T 24-25; despite Plaintiff's complaints of psychological symptoms, and "although she had been prescribed Zoloft by her primary care provider for the last fifteen years, [as of Dr. Grassl's December 2016 consultative psychological examination] she was not currently in therapy or engaging in any other specialized mental health treatment," T 25; since that consultative examination, there was "no evidence ... that [she] has received any additional mental health treatment, nor is there evidence of any significant symptom worsening or exacerbation that has required urgent, emergency, or inpatient treatment, indicating that her symptoms are generally stable despite her routine and conservative regimen," Tr. 25; Dr. Grassl found that Plaintiff "was cooperative and was able to relate normally, she made appropriate eye contact, her insight and judgment were fair, and her attention and concentration were intact," T 25; and "mental status examinations by other providers have typically found that the claimant had a normal mood and affect, as well as normal judgment, thought content, and there is no evidence of objective deficits in memory, attention span, or ability to sustain focus." T 25.

granted in part and denied in part.  The motion is denied to the extent Plaintiff seeks to vacate the ALJ's decision on grounds that the ALJ improperly analyzed Plaintiff's subjective complaints of symptoms.  The motion is granted to the extent Plaintiff contends that the ALJ erred by only giving "limited weight" to Dr. Singh's treating opinion.  For these same reasons, the Commissioner's motion for judgment on the pleadings is granted in part and denied in part.

Accordingly, the decision of the Commissioner is **REVERSED**, and this action is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Decision and Order.

The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: March 29, 2022

Thomas J. McAvoy
Senior, U.S. District Judge

21